IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 2:94-cr-00221-2 |
| | ) |
| CHARLES STUBBS, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Petitioner Charles Stubbs ("Stubbs") asks this Court to issue a writ of error coram nobis pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a). (*See* ECF No. 330.) For the reasons set forth below, Stubbs' Petition (ECF No. 330) is **DENIED** without prejudice.

**I.    BACKGROUND**

The parties are familiar with the lengthy history of Stubbs' two criminal cases (docket numbers 2:94-cr-221-2 and 2:99-cr-175-1), so the Court recites it only as necessary here.

  a. *1994 offenses and subsequent prosecution*

The following facts are not in dispute in this proceeding. On September 12, 1994, Stubbs and two confederates robbed a Mellon Bank in Pittsburgh, Pennsylvania. In the course of that crime, Stubbs carried a .45 caliber semiautomatic pistol, which he brandished while entering the bank and pointed at the head of a bank teller from no more than ten feet away to provide cover and prevent interference while another person involved in the robbery took the money. Stubbs also pushed an elderly man who attempted to enter the bank during the commission of the robbery.

On September 14, 1994, Stubbs and others attempted to rob a Dollar Bank in Penn Hills, Pennsylvania. This time, law enforcement officers—having received information from various confidential informants—were waiting for them and intervened. A chase ensued, during the course

1

of which one of Stubbs' accomplices pointed a gun in a police officer's direction. Though Stubbs did not have a gun during the pursuit, a search of the getaway car produced a .45 caliber semiautomatic pistol where Stubbs was seated.

A federal grand jury returned an indictment charging Stubbs with, *inter alia*, one count of completed bank robbery (corresponding to the September 12 robbery); one count of attempted bank robbery (corresponding to the September 14 attempt); and two counts of use of a firearm during a crime of violence (one corresponding to the September 12 robbery and one corresponding to the September 14 attempted robbery). (ECF No. 330-1.) Stubbs entered into a plea agreement with the Government, pleading guilty to attempted armed bank robbery (the September 14th event) and use of a firearm during a crime of violence. (ECF No. 348-2.)

Crucially, the § 924(c) count to which Stubbs pled guilty corresponded to the September 14 *attempted* armed bank robbery; all charges related to the September 12 *completed* armed bank robbery were dismissed. (*See id.*; ECF No. 330-1.) The plea agreement provided that the dismissal was "without prejudice to their reinstatement if, at any time, Charles Stubbs is permitted to withdraw his plea of guilty." (ECF No. 348-2, at 2.)

The plea deal reduced Stubbs' maximum sentencing exposure from 75 to 25 years of imprisonment. Ultimately, on January 23, 1995, Stubbs was sentenced to 60 months in prison at each count to which he pled guilty (attempted bank robbery on September 14 and the gun charge from the same date) to run consecutively with one another, with three years of supervised release to follow. (2003 PSR, ECF No. 348-1 ¶ 39 [hereinafter 2003 PSR].) Stubbs did not appeal. He was released from incarceration in August 1998. (*Id.*)

*b. 1999 offenses and subsequent prosecution*

During the fall of 1999, the FBI received information from a confidential source that an individual named Larry Brown was going to rob a bank in the Pittsburgh area. (*See id.* ¶ 7.) The FBI began to surveil Brown's home and activities, and Brown and two accomplices (one of whom was later identified as Stubbs) were observed repeatedly visiting various banks in the Western District. (*Id.* ¶¶ 7–8.) The men were also observed purchasing ski masks and gloves from a department store in Penn Hills. (*Id.*)

On October 7, 1999, Stubbs and his accomplices appeared to be preparing to rob a PNC Bank in Penn Hills. (*Id.* ¶ 9.) However, after surveying the bank, they departed and surveillance lost sight of them. (*Id.*) About an hour later, they robbed a Dollar Bank in Monroeville. (*Id.* ¶¶ 9–10.) Stubbs remained in the customer area, holding a gun to the tellers' heads, while the other two vaulted the counter and collected the money. (*Id.* ¶ 10.) The actors (including Stubbs) returned to Brown's home in Homewood, where police arrested them. (*Id*. at ¶¶ 10–11.)

A grand jury sitting in Pittsburgh returned a five-count indictment against Stubbs and his confederates, charging Stubbs with conspiracy; attempted bank robbery; armed bank robbery; possession of a firearm by a convicted felon; and as most relevant here, the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)[1].

At trial, Stubbs was convicted on all counts and ultimately sentenced on September 19, 2003 to five hundred and sixty-two (562) months imprisonment. (No. 99-cr-175, ECF No. 218; 270.)[2] Three enhancements factored into Stubbs' sentence: an Armed Career Criminal Act

---

[1] Hereafter, the Court refers to the § 924(c) conviction stemming from the 1994 attempted robbery as Stubbs' "first § 924(c) conviction" and the § 924(c) conviction stemming from the 1999 completed robbery as Stubbs' "second § 924(c) conviction."

[2] The Court omits discussion of procedural history not directly relevant to the disposition of this Motion.

("ACCA") fifteen-year mandatory minimum; a career offender enhancement; and a twenty-five-year, consecutive mandatory minimum sentence because Stubbs had a previous § 924(c) conviction—i.e. the § 924 (c) conviction arising from the September 14, 1994 attempted bank robbery. (*See* 2003 PSR ¶¶ 30–32, 61.)

    c. *Initial 2255 proceedings*

In 2007, Stubbs filed a motion under 28 U.S.C. § 2255 making a number of claims related to ineffective assistance of counsel, the constitutionality of § 924(c), and challenging the imposition of concurrent sentences at his 2003 sentencing for both armed bank robbery and the lesser included offense of bank robbery. *See United States v. Stubbs*, 2007 WL 1232139 (W.D. Pa. Apr. 26, 2007) (Ambrose, J.). The Court rejected Stubbs' ineffective assistance and § 924(c) claims but vacated the sentence for the lesser included offense of bank robbery (leaving intact the conviction and sentence for armed bank robbery). *See id.* at *3. Because the sentences on the bank robbery and armed bank robbery convictions ran concurrently, those proceedings did not impact Stubbs' aggregate sentence.

    d. *Second/successive 2255 proceedings*

In June 2016, with authorization from the Third Circuit, Stubbs filed a second-or-successive § 2255 motion. That motion (in conjunction with its supplemental briefing) argues that Stubbs' 2003 sentence is unconstitutional, citing three main developments in the case law since his 2003 conviction and sentencing. That Motion is pending before another member of this Court.

First, in *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court invalidated ACCA's residual clause, holding that "[i]nvoking so shapeless a provision to condemn someone to prison for 15 years to life" violates the Fifth Amendment's prohibition on vague criminal laws. *Id.* at 602. *See also Welch v. United States*, 578 U.S. 120, 130 (2016) (holding that *Johnson* is

4

retroactive on collateral review). Stubbs argues that his ACCA enhancement relied on the residual clause and is therefore unconstitutional, citing *Johnson* and *Welch*. (*See* No. 2-99-cr-175, ECF No. 292, at 2.) Moreover, Stubbs argues that his sentence violates the statutory maximum sentence of ten years which applies to a defendant not subject to an ACCA enhancement. (*Id.*)

Second, in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that the categorical approach applies to crime-of-violence determinations under § 924(c), thus rendering § 924(c)'s residual clause unconstitutional for the same reasons enumerated as to ACCA in *Johnson*. *See Davis*, 139 S. Ct. at 2328, 2336. Third, in *United States v. Taylor*, 142 S. Ct. 2015 (2022), the Supreme Court held that an *attempt* to commit Hobbs Act robbery does not have as an element the use, attempted use, or threatened use of physical force. *Id.* at 2025. Thus, attempted Hobbs Act robbery cannot serve as a predicate for a violation of § 924(c). Analogizing his crime of conviction—attempted bank robbery—to Hobbs Act robbery, Stubbs argues that attempted bank robbery cannot serve as a predicate for a violation of § 924(c), and therefore that his 2003 conviction under § 924(c) is unconstitutional. (*See* No. 99-cr-175, ECF No. 378, at 2, 7.)

Thus—on the basis of his arguments regarding both his 2003 ACCA enhancement and 2003 § 924(c) conviction—Stubbs argues in his parallel case that his conviction must be vacated and resentencing must be ordered.

For several years, Stubbs' § 2255 motion was stayed by agreement of the parties pending the outcome of litigation in the courts of appeal and Supreme Court. (*See id.*) Though, to the Court's knowledge, all such relevant underlying appellate litigation has been resolved—including, most recently, *United States v. Jenkins*, No. 18-2222 (3d Cir. 2022)—the 2255 petition remains stayed pending the outcome of the instant coram nobis petition. (*See* No. 99-cr-175, ECF No. 378, at 6–7; No. 99-cr-175, ECF No. 379.)

### e. Instant challenge

On August 19, 2022, Stubbs filed the instant Petition for a writ of error coram nobis. As described in more detail below, Stubbs argues that: (1) attempted robbery is not a crime of violence under *Taylor* and therefore Stubbs' first § 924(c) conviction (from the 1994 events) is invalid and (2) vacating that conviction is crucial because he is currently serving the twenty-five-year mandatory minimum associated with a *second* § 924(c) conviction (arising from the 1999 events). Stubbs' argument, in other words, is that because he could not be convicted under § 924(c) for conduct related to the 1994 attempted bank robbery today, that conviction is invalid and must be vacated because he is still suffering its consequences—specifically a statutory mandatory minimum for a second § 924(c) conviction. The Petition was fully briefed as of December 9, 2022. (*See* ECF No. 330, 347, 355.) The Court heard Oral Argument on the Petition on January 11, 2023. (*See* ECF No. 357.)

## II.   LEGAL STANDARD

A writ of error coram nobis allows a petitioner to challenge his federal conviction when he is no longer in custody but still faces consequences from his conviction. *United States v. De Castro*, 49 F.4th 836, 842 (3d Cir. 2022). "A writ of error coram nobis is an 'extraordinary remedy' that may only be issued in the most limited of circumstances." *Id.* (citing *United States v. Denedo*, 556 U.S. 904, 911 (2009)).

Under Third Circuit law, there are "five prerequisites" for coram nobis relief. The Petitioner must: (1) no longer be in custody; (2) suffer from continuing consequences from the purportedly invalid conviction; (3) provide sound reasons for failing to seek relief earlier; (4) have had no available remedy at the time of trial; and (5) assert errors of a fundamental kind. *See Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020). These Third Circuit has cautioned that "strict

adherence" to these five prerequisites is required and that, "[t]o grant a petition for a writ of error coram nobis, a District Court must find [that] a petitioner has established all five *Ragbir* prerequisites." *De Castro*, 49 F.4th at 842, 848.

### III. DISCUSSION

The Government concedes that the first two prerequisites are met here, and the Court agrees. As to his first § 924(c) conviction (and the related charges), Stubbs was released from custody in 1998. However, he is currently serving a term of imprisonment resulting from the crimes he committed in 1999, including his second § 924(c) conviction—which carries with it a twenty-five-year mandatory minimum sentence in light of the fact that it is a *second* § 924(c) conviction. Thus, the Court concludes that Stubbs' first § 924(c) conviction has continuing consequences. *See United States v. Osser*, 864 F.2d 1056, 1060 n.3 (3d Cir. 1988) (noting without deciding that "the possibility of heavier punishment in the event of a conviction in the future may be a cognizable collateral consequence.")).

    *a. Sound reasons for failing to seek relief*

"A petitioner is not required to challenge his conviction at the earliest opportunity; the writ only requires a petitioner to have sound reasons for not doing so." *Ragbir*, 950 F.3d at 63 (citation and internal marks omitted). As the Third Circuit has stated, "coram nobis reflects the tension that so often exists between finality and equity." *Id.* at 62–63. Though there is no rigid, brightline time limit, case law within the Third Circuit makes clear that the sound reason standard is "even stricter than that used to evaluate § 2255 petitions," *see id.* at 63; *De Castro*, 49 F.4th at 844, "because habeas is generally the exclusive means to collaterally challenge a federal conviction or sentence." *Ragbir*, 950 F.3d at 63 (citing *Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012)).[3] A

---

[3] The Court notes that, although the Supreme Court's recent decision in *Jones v. Hendrix* is not directly on point here, the Third Circuit's strict timeliness requirement for coram nobis relief (strictly enforced in light of the primacy of §

7

court must undertake an "individualized assessment" to determine whether sound reasons justify the delay in the filing of petition. *De Castro*, 49 F.4th at 844.

The dispute between the parties as to this prerequisite boils down to this: according to Stubbs, the fact that there was a "wall" of on-point, unequivocally adverse Third Circuit precedent foreclosing any argument he would have made in the past regarding the constitutionality of § 924(c)'s residual clause constitutes a sound reason for his delay in seeking relief. (*See* ECF No. 330, at 11–13.) According to Stubbs, "the earliest possible time that he could have initiated this action challenging the 1994 § 924(c) was in 2019," after the Supreme Court decided *Davis*. (*See* ECF No. 355, at 16.) And, "it was not until *Taylor* was decided in 2022 that it became clear that" Stubbs' first § 924(c) conviction (for attempted robbery) was illegitimate. (*See* ECF No. 330, at 12.) Stubbs offers no reason—other than adverse precedent—to explain the delay in seeking relief.

The Government, for its part, makes two points in response. First, the Government argues that neither legal ambiguity nor directly on point, adverse precedent is in and of itself a sound reason for delay. (*See* ECF No. 347, at 12–19.) According to the Government, the relevant inquiry is whether the claim can *reasonably be raised*, and the Government says that the *Taylor* argument was reasonably available to Stubbs for at least seven years.[4] (*See id.* at 13–14.) Second, the Government argues that no sound reasons justify that seven-year delay: Stubbs could have raised the argument long ago, and he simply did not.

---

2255 as a vehicle for habeas challenges) coheres with the reasoning of *Jones v. Hendrix*. *See Jones v. Hendrix*, No. 21-857, slip op. at 10–11 (June 22, 2023) (declining to interpret the "savings clause" of § 2255 to "authorize . . . an end-run around" the strict requirements of § 2255 because "§ 2255 is the ordinary vehicle for a collateral attack on a federal sentence.")

[4] In June 2016, Taylor sought and obtained a Certificate of Appealability to pursue his second § 2255 motion, raising arguments under *Johnson* and *Welch* to argue that *conspiracy* to commit robbery was not a crime of violence under § 924(c). (ECF No. 347, at 13–14.) Thus, based on the litigation in *Taylor*, and similar cases in other circuits, it appears that the argument Stubbs raises here was *reasonably available* in 2015–2016.

8

The Court agrees with the Government that, based on this Circuit's precedent interpreting the "sound reason for delay" prerequisite, Stubbs has offered no such reason.

Under Third Circuit law, the relevant inquiry is "whether a claim can *reasonably be raised*." *Ragbir*, 950 F.3d at 65 (emphasis added). The issue is not whether a claim would have succeeded, but instead whether the petitioner had the ability to raise the argument. *De Castro*, 845 F.4th at 845. The fact that a particular argument's success is foreclosed by "a uniform wall of precedent" is not a sound reason for delay. *Id.* at 846 (citing *Greer v. United States*, 141 S. Ct. 2090, 2099 (2021)). The existence of "trial and appeal caselaw . . . criticizing" the relevant, otherwise settled principle of law is enough to establish that the petitioner "could have reasonably asserted" that the application of that principle "was flawed." *Ragbir*, 950 F.3d at 65 n.29.

The Court will not belabor the point: *Rabgir* and *De Castro* require the conclusion that no sound reason exists for Stubbs' delay in raising the *Johnson/Taylor* argument.[5] As the Government points out, the petitioner in *Taylor* sought and obtained a Certificate of Appealability to pursue a second § 2255 motion in June 2016. (ECF No. 347, at 14 (citing Docket in *United States v. Taylor*, No. 08-cr-326 (E.D. Va.)) In that filing, the petitioner cited to arguments from *Johnson* (decided in 2015) and *Welch* (decided in 2016). *Id.*

*Taylor* originated in the Fourth Circuit, but the Fourth Circuit was not the only court of appeals to consider whether inchoate offenses can qualify as predicate crimes of violence for §

---

[5] In his Reply, Stubbs argues that *De Castro* "does not establish a *per se* rule that petitioners must raise arguments at the earliest theoretically possible time" and that "*De Castro* should be read with caution and strictly limited to its facts" as to that holding. (ECF No. 355, at 18–21.) Whether *De Castro* requires petitioners to raise an argument at the earliest possible time is irrelevant here because the delay is not one of a few months or even a few years, but almost seven years. Moreover, the Court declines Stubbs' invitations to limit *De Castro* to its facts (*see* ECF No. 355, at 18, 21) or understand it as (illegitimately) overruling *Ragbir* in contravention of Third Circuit Operating Procedure 9.1 (*see id.* at 21). At a minimum, for all purposes relevant here, *De Castro* and *Ragbir* are consistent: both indicate that that on-point, clearly adverse precedent does not render an argument unavailable; an argument is "available" for these purposes at any point in time that case law exists criticizing the relevant principle. *See De Castro*, 49 F.4th at 844–46; *Ragbir*, 950 F.3d at 65 n.29.

924(c) purposes. The Seventh Circuit considered and rejected the argument that *attempted* bank robbery was not a crime of violence within the meaning of § 924(c) in 2016 in *United States v. Armour*, 840 F.3d 904 (7th Cir. 2016)—a decision which was published in the Federal Reporter. That opinion, citing to an earlier rejection of a petition to file a second or successive § 2255 motion on similar grounds, noted the groundswell of such arguments in the wake of *Jonhson*. *Id.* at 909 n.3 (citing *Morris v. United States*, 827 F.3d 696 (7th Cir. 2016) (Hamilton, J., concurring)).

Thus, at least as early as 2016, the argument that attempted bank robbery was not a crime of violence was "available" to Stubbs as that term is used in this context, and under binding Third Circuit precedent, he has offered no sound reason for the roughly six-year delay in raising it. *See, e.g.*, *Ragbir*, 950 F.3d at 66 (six-year delay prohibitive when petitioner "provide[d] no sound reason"); *Mendoza*, 690 F.3d at 160 (four-year delay unjustified).

    b. *No remedy at the time of guilty plea*

The Third Circuit has "not previously elaborated on the requirement that there was no available remedy at the time of trial"—or in Stubbs' case his guilty plea. *Ragbir*, 950 F.3d at 63; *see also De Castro*, 49 F.4th at 846. However, "it focuses on whether the party was unable to make certain arguments at trial or on direct appeal." *Ragbir*, 950 F.3d at 63. Generally, there seems to be overlap between the "sound reasons for delay" and "no available remedy at the time of trial" prerequisites such that the two prongs are often examined together or in reference to one another. *See id.* & 67 n.36; *De Castro*, 49 F.4th at 844 n.2.

Stubbs argues that he could not have made the argument that attempted bank robbery was not a crime of violence at least until after *Davis* was decided in 2019, which struck down the residual clause of § 924(c) as unconstitutionally vague. Thus, he could not have argued at his 1994 plea hearing or on direct appeal that attempted bank robbery was not a crime of violence under §

10

924(c). (ECF No. 355, at 13.)

The Government, for its part, argues that Stubbs fails to meet this requirement for the same "twin reasons" that he fails to meet the "sound reasons for delay" requirement: "[h]is argument was not futile as a legal matter because even a 'wall of precedent is no excuse for his failure to preserve [an] argument'" and he lacked sound reasons for delay. (*See* ECF No. 347, at 19 (citing *De Castro*, 49 F.4th at 846) (cleaned up).)

Stubbs' case appears to present more extreme circumstances than those cases that the parties have cited. The Government is asking the Court to infer that the fact that an argument (i.e. that the residual clause of § 924(c) is unconstitutionality vague) was reasonably available in 2016 means that Stubbs had a remedy available twenty-one (21) years earlier at his plea hearing. In *De Castro*, the only case that the Government cites to support this argument, the defendant's guilty plea was entered in 2017. *See* 49 F.4th at 841. He was raising a *Rehaif* argument, which was initially addressed by the district court in 2016, *see* No. 6:16-cr-3, 2016 WL 2770878 (M.D. Fla. May 12, 2016) and the Eleventh Circuit in 2017, *see United States v. Rehaif*, 868 F.3d 907 (11th Cir. 2017). Thus, at the precise time of De Castro's plea, the *Rehaif* agument on which he sought to rely was already circulating in the lower courts.

And in *Ragbir*, although the defendant's trial took place in 2000, and the case law on which defendant relied in his *coram nobis* petition was not decided until 2011, according to the panel the case to which defendant pointed "did not promulgate a new test . . . [but] rather . . . stated already settled law." 950 F.3d at 65 n.29 (citing cases from 1985 onward). The panel stated that it "perceive[d] no ambiguity in" Third Circuit case law but noted that "even if a lack of clarity existed, [the defendant] *could have reasonably argued* at trial or on appeal" that the challenged jury instruction was erroneous. *Id* (emphasis added).

11

Here, the Government has pointed to no instance of a defendant raising the at-issue § 924(c) argument, or any analogous argument, even remotely in the time frame of Stubbs' 1995 plea. Given the lack of precedent exploring this requirement, the seeming uniqueness of the circumstances presented here, and the fact that the Court's conclusion as to this factor will not play a determinative role in the outcome of this case, the Court need not resolve this issue in favor of either party. However, given the much longer time window involved, the Government's argument on this issue is stretched to, or perhaps beyond, the breaking point.

      c. *Error of a fundamental kind*

"An error is fundamental if it would result in a 'complete miscarriage of justice.'" *De Castro*, 49 F.4th at 847 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). A fundamental error is one that usually cannot be remedied simply by a new trial, but instead "completely undermine[s] the jurisdiction of the court." *Ragbir*, 950 F.3d at 63. In the coram nobis context, a petitioner can satisfy the fundamental error requirement by showing either (i) cause and prejudice or (ii) actual innocence. *De Castro*, 49 F.4th at 847 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

      i. <u>Cause and prejudice</u>

The "cause" prong of the cause and prejudice analysis maps largely onto the prerequisites described above. In short, Stubbs cannot demonstrate cause because a panel of the Third Circuit has foreclosed that argument: "Cause does not exist just because an argument seemed futile to the petitioner at the time of trial or guilty plea." *Id.* Thus, the fact that the raising a *Taylor* style argument may have seemed futile in 1994 does not establish cause for his failure to do so.

Given that Stubbs cannot demonstrate cause, the Court need not analyze prejudice.

### ii. Actual innocence

Alternatively, if a coram nobis petitioner cannot establish cause and prejudice, he must establish actual innocence to prevail. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. This much the parties agree on. (*See* ECF. No. 347, at 22; ECF No. 355, at 6.) The dispute between the parties as to actual—i.e. factual—innocence boils down to: "innocence of which charges?"

Relying on *De Castro,* which cites *Bousley*, the Government contends that Stubbs must prove actual innocence of "more serious charges" that were dismissed as part of the plea-bargaining process related to the 1995 sentencing.[6] (ECF No. 347, at 22.) Exactly what constitutes a "more serious charge" on the Government's view is not clear from the papers, but the Government argues that, at a minimum, Stubbs' dismissed armed bank robbery charge and associated § 924(c) charge (arising from the September 12, 1994 completed bank robbery) are "more serious" than the § 924(c) charge at issue in Stubbs' coram nobis petition (arising from the September 14, 1994 attempted bank robbery). (*See* ECF No. 347, at 24.)

Nor is Stubbs' position as to which charges the petitioner must establish actual innocence of entirely clear from his papers. On the one hand, Stubbs argues that *Bousley* is inapposite because the Government "does not cite a single precedential Third Circuit decision addressing coram nobis that adds to that already onerous test an *additional* requirement that the fundamental error must extend beyond the challenged conviction." (ECF No. 355, at 6.) This argument implies that Stubbs

---

[6] The argument goes as follows: the portion of *De Castro* addressing the fundamental error prerequisite reads "[i]n the habeas context, we allow a party to overcome [its] 'procedural default' if it can show either cause or prejudice or actual innocence." 49 F.4th at 847 (citing *Bousley*, 523 U.S. at 622). A dozen or so words later, the Opinion continues: "The Government urges us to adopt *the same rule* in the coram nobis context. Consistent with" the notion that "the standard for obtaining coram nobis *is more stringent* than" that applicable to "habeas corpus, we oblige." *Id.* (emphasis added). Thus, the argument goes, the standard for actual innocence in the coram nobis context is *more stringent* than that articulated in *Bousley*, which requires the petitioner to show actual innocence of "more serious charges." *See* 523 U.S. at 623.

13

need not prove his innocence of *any* charges other than the at-issue § 924(c) charge. However, Stubbs also appears to acknowledge that—where the Government has opted to pursue a lesser included offense (e.g. voluntary manslaughter instead of second-degree murder)—the petitioner would be required to prove actual innocence of the greater offense. (*See* ECF No. 355, at 7.)

The Court acknowledges that the law in this area is somewhat murky. Stubbs is correct that the Government does not cite a single case in a directly analogous context—that is, a coram nobis petition where the petitioner was required to prove actual innocence of dismissed charges which were not simply "greater" offenses of the actual charge of conviction.[7] However, nor has Stubbs cited a single case that is binding on this Court and directly analogous to support the view that he need not prove actual innocence of the completed armed bank robbery and the associated § 924(c) charge arising from the events of September 12, 1994, which of course would not be subject to a challenge under *Johnson*.

Stubbs cites *United States v. Adams*, 814 F.3d 178 (4th Cir. 2016). In *Adams*, the Government argued that—in addition to showing actual innocence of a § 922(g)(1) (felon in possession) charge—the petitioner must also show actual innocence of the five dismissed counts relating to "separate allegations of different criminal conduct." 814 F.3d at 184. The dismissed counts were three counts of robbery of a business engaged in interstate commerce and two counts of using and carrying a firearm during a crime of violence. (*See id.* at 180; *United States v. Adams*, No. 5:08-cr-0004 (E.D.N.C.) ECF No. 1, 81 at 14–18.)  The Fourth Circuit rejected the Government's contention, highlighting that "the dismissed counts related to separate allegations

---

[7] *Johnson v. Pinchak* involved a plea to felony murder in exchange for dismissal of the capital charge in the habeas context. *See* 392 F.3d 551, 564–65 (3d Cir. 2004). In *United States v. Parker*, 793 F. App'x 64, 65 (3d Cir. 2019) the issue was the enforcement of a collateral challenge waiver and in *United States v. Goodall*, 21 F.4th 555, 558 (9th Cir. 2021), a direct appeal waiver. *Lewis v. Peterson*, though otherwise strong for the Government, involved a § 2255 petition and is non-binding on this Court. 329 F.3d 934 (7th Cir. 2003).

14

of different criminal conduct" and concluding that "[n]either *Bousley* . . . nor common sense require[d] Adams to show that he is actually innocent of other, dissimilar charged conduct in order to show that he is actually innocent of being a felon in possession of a firearm." 814 F.3d at 184. But *Adams* is not directly on point. Here, the issue is whether Stubbs must show that he is actually innocent of (a) conduct that violates the exact same statute and which was actually charged by the Government in the original indictment and/or (b) armed bank robbery, which is conceptually part and parcel of the § 924(c) charge the Government contends Stubbs must prove his innocence of.

Stubbs also cites to *Watson v. United States*, No. 3:16-cv-409, 2019 WL 4678784 (W.D.N.C. Sept. 25, 2019) as directly analogous. There, the defendant was charged with *inter alia*, one § 924(c) violation relating to (completed) Hobbs Act robbery and one § 924(c) violation relating to Hobbs Act conspiracy. *Id.* at *1. As part of the plea-bargaining process in *Watson*, the Government dismissed the charge relating to the completed Hobbs Act robbery, and the defendant pled guilty to the charge relating to the conspiracy to commit Hobbs Act robbery. In the wake of *Johnson*, the defendant filed a § 2255 motion arguing that his § 924(c) conviction was invalid under *Jonhson*. *Id.* at *2. The district court rejected the Government's argument that, in order to make the actual innocence showing required by § 2255, *Bousley* required that the defendant show actual innocence of the § 924(c) charge relating to completed Hobbs Act robbery, relying on the Fourth Circuit's decision in *Adams*. *Id.* at * 4.  However, in addition to being non-binding on this Court, *Watson* does not contain much reasoning explaining why the district court extended the holding of *Adams* to apply to situations involving two counts of the same type of criminal conduct, one of which was dismissed as part of the plea-bargaining process.

The in-Circuit case law that the Court's research uncovered cuts against Stubbs. In *United States v. Craft*, 514 F. App'x 91 (3d Cir. 2013) ("Craft II"), a panel of the Third Circuit denied a

15

§ 2241 petition, noting that the petitioner had demonstrated neither actual innocence of his charge of conviction—causing the death of another by the use of a firearm during a drug-trafficking offense, in violation of 18 U.S.C. § 924(j)—nor "more serious charges." *Id.* at 92–94. The § 924(j) charge to which Craft pleaded guilty and was seeking to vacate was associated with murder, and therefore had neither a statutory minimum nor a statutory maximum. *See United States v. Craft* ("Craft I"), 139 F. App'x 372, 374 (3d Cir. 2005); *see also* 18 U.S.C. § 924(j)(1) (providing for punishment "by death or imprisonment for any terms of years or for life").  The "more serious charges" were two § 924(c) charges, the first of which the panel noted would have added a five-year consecutive mandatory minimum and the second of which—as in Stubbs' case—would have added a mandatory twenty-five-year consecutive sentence. Craft II, 514 F. App'x at 94; *see also United States v. Craft*, No. 02-cr-11-1, ECF No. 15, at 5–6 (M.D. Pa. 2002).

Similarly, in *Hazelton v. Shannon*, 05-cv-2068, 2006 WL 2302666 (M.D. Pa. Aug. 8, 2006), Judge Kosik adopted a Report & Recommendation stating that the petitioner could not show actual innocence (of criminal trespass and theft by unlawful taking) because he could not show actual innocence of, *inter alia*, a second charge of unlawful taking which was nolle-prossed as a result of the guilty plea, citing *Bousley*. *Id.* at *11.

Based on the case law available, the Court concludes that a coram nobis petitioner must prove actual innocence of any "more serious" charges dismissed as part of the plea-bargaining process. The reasoning behind the at-issue requirement is straightforward: "[t]he apparent reason for requiring a showing of innocence on dismissed charges is that those charges often cannot be reinstated due to the running of the . . . statute of limitations." *United States v. Lloyd*, 188 F.3d 184, 189 n.11 (3d Cir. 1999), abrogated in part on other grounds by *Dodd v. United States*, 545 U.S. 353 (2005)). Requiring the defendant to show actual innocence of dismissed charges prevents

16

a defendant from receiving an "unjustified windfall." *United States v. Caso*, 723 F.3d 215, 223 (D.C. Cir. 2013) (quoting *Lewis v. Peterson*, 329 F.3d 94, 936 (7th Cir. 2003)). This rationale suggests, though not conclusively, that a defendant must show actual innocence of "an equal as well as [a] more serious charge." *See id.* n.6.

The real issue is how to determine which offenses are more serious, and the briefing in this case has shed little light on this issue. But this may be result of the dearth of case law. The Court's research suggests that the question of what the metric for "more serious" is has never been squarely presented to the Third Circuit. Third Circuit cases suggest that district courts can look to the Sentencing Guideline range and/or mandatory minimum sentences, as applicable. *See Craft*, 514 F. App'x at 94 (mandatory minimum); *Lloyd*, 188 F.3d at 189 (declining to find that a felon-in-possession law with a sentencing guideline range of 27–33 months was more serious than a § 924(c) with a five-year mandatory minimum). In the Court's view, considering statutory maxima, especially in light of the now-advisory nature of the Sentencing Guidelines, may also best shed light on the seriousness of a charge and is consistent with the Third Circuit's approach in *Craft* and *Lloyd*.

Applying these principles to this case, the Court concludes that at least the dismissed § 924(c) charge was "more serious" than Stubbs' § 924(c) charge of conviction. Stubbs' at-issue charge of conviction—a single § 924(c) offense associated with the September 14 attempted armed bank robbery—had a five-year mandatory minimum. But in the context of Stubbs' case, at the time of his guilty plea, the dismissed § 924(c) charge would have carried a twenty-five-year mandatory

17

minimum because it would have been a *second* § 924(c) conviction.[8,9] Thus, at the time of Stubbs' plea, the dismissed § 924(c) charge (associated with the September 12 completed bank robbery) was "more serious" than the charge of conviction. And Stubbs has not argued that he could prove his innocence of the dropped § 924(c) charge: indeed, neither the record nor the arguments of the parties casts any doubt on Stubbs using a firearm during the course of the September 12 completed armed bank robbery.

Because the Court concludes that Stubbs cannot demonstrate actual innocence of one "more serious" charge that was dropped in exchange for his guilty plea to the challenged charge of conviction, the Court need not consider whether the completed armed bank robbery charge (arising from the events of September 12) constitutes a second, more serious charge. Stubbs cannot make the showing required by *Bousley* via *De Castro* and therefore fails to meet the fifth requirement of coram nobis relief.

---

[8] Under current law, a twenty-five-year mandatory minimum applies only if the second violation "occurs after a prior *conviction* under this subsection *becomes final*." 18 U.S.C. § 924(c)(1)(C) (emphasis added). However, this provision of the law was amended as part of the First Step Act of 2018, First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. "Before the [First Step] Act, the 25-year [mandatory] minimum was triggered by *any* 'second or subsequent conviction'" under § 924(c)." *United States v. Gomez*, 960 F.3d 173, 176–77 (5th Cir. 2020) (emphasis added). "Now, to trigger the 25-year [mandatory] minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution." *Id.*

[9] A rational observer may note that the charge which the Court has concluded is "more serious" here is in fact the same as the charge as the challenged conviction, that is it is a conviction under the exact same subsection of the exact same statute. However, the Court concludes that the dropped § 924(c) charge was "more serious" as the term is used in the § 2255 and coram nobis context for two reasons. First, the cases, scant though they are, suggest that the Court must look to the penalties that the petitioner actually would have faced in the real-world context of his plea and sentencing. *See Lloyd*, 188 F.3d at 189 (citing the petitioner's guideline range). Second, as a panel of the D.C. Circuit observed in *Caso*, the rationale underlying the requirement that a petitioner prove innocence of more serious charges—that a petitioner not receive an unjustified windfall—seems to apply equally when a petitioner violated the same statute more than once and both violations were charged in the same indictment. 723 F.3d at 224 n.6. That rationale is only amplified in cases where, in the context of the petitioner's actual plea and sentencing, the penalty for the dropped charge would have carried a radically harsher penalty than the charge to which the petitioner pled.

## IV.     CONCLUSION

For the reasons set forth above, Stubbs' Petition for a writ of error coram nobis (ECF No. 330) is **DENIED** without prejudice. In particular, it appears to this Court that either or both of Stubbs or the Government may advance similar or related arguments as to the impact, if any, of the substantial changes in federal sentencing law outlined above in the context of the § 2255 Motion pending at Criminal Number 99-175-001 (including any resentencing resulting from that case) before another member of this Court.

An appropriate Order will issue.

s/Mark R. Hornak  
Mark R. Hornak  
Chief United States District Judge

Dated: August 1, 2023